# EXHIBIT 4

AMERICAN ARBITRATION ASSOCIATION
------------------------------------------------------------------X
MED QUEST, LTD. dba RECORD REFORM,

                                      Petitioner,

                -against-

TRIVENT SYSTEMS INCORPORATED, TRIVENT
SYSTEMS PVT, LTD. SENGUTTUVAN S.
SAM SHANMUGAM and ROY DIXON,

                                  Respondents.

------------------------------------------------------------------X

Case # 01-22-0004-0989

**APPLICATION FOR
EMERGENCY RELIEF
UNDER AAA RULE 39**

Petitioner, MedQuest LTD. d/b/a Record Reform ("MedQuest") by its attorneys, Mound Cotton Wollan & Greengrass LLP, hereby applies for emergency relief pursuant to AAA Rule 39. Pursuant to that rule, "Within one business day of receipt of notice from the AAA initiating the request referenced in subsection (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications."

**<u>Introduction and Summary</u>**

As explained in detail below, and in the accompanying affidavit of Elliot Stone, Petitioner MedQuest seeks emergency relief under AAA Rule 39 because respondents Trivent Systems Incorporated, Trivent Systems Pvt, Ltd., Senguttuvan S. Sam Shanmugam and Roy Dixon (collectively the "Trivent Respondents" or "Trivent") have unilaterally and maliciously cut off access to MedQuest's customers' confidential client data, which they are storing on a remote server located in India. As a result of Trivent's unilateral conduct, MedQuest has not had access to its confidential customer information since August 2, 2022, thereby endangering MedQuest's entire business operation, causing it to lose numerous customers and placing it in immediate jeopardy of going out of business. On a daily basis, MedQuest is receiving panicked and anxious requests from its own customers for medical records and prior work that they cannot

1

access due to Trivent's unilateral decision to cut off access to its web-based storage system. As a result, MedQuest, which has been in the business of providing medical record access for the past eleven years, faces an existential crisis. MedQuest is losing customers on a daily basis. MedQuest's customers are canceling orders and taking their business elsewhere, i.e. to Trivent, its affiliates and competitors. And MedQuest could be exposed to potential future suits and claims by these customers.

And the Trivent Respondents are not content merely to shut down MedQuest's access to its customers' medical records.  They are also actively soliciting those customers, seeking to entirely choke off MedQuest's lifeblood.  In so doing, the Trivent Respondents are endangering over 3000 law firm relationships (comprising about 7000 attorneys) that MedQuest and its principals have built up over the course of eleven years. And it's working.  Many longstanding MedQuest customers are fleeing as a result of Trivent's aggressive pressure campaign. Prior to the Trivent Respondents' tortious and unfair competition, MedQuest's Record Reform division had once had a far larger customer base than Trivent did.  Now, MedQuest's customers are leaving in droves.

<u>Relief Requested</u>

MedQuest respectfully requests an injunction directing the Trivent Respondents to provide it with immediate real-time access to all of its customer records and any summaries or synopses of them. In addition, MedQuest respectfully requests an injunction temporarily enjoining the Trivent Respondents and their affiliates from engaging in any direct or indirect solicitation of MedQuest customers pending resolution of the merits of the claim at a plenary hearing.  MedQuest further seeks an order permitting attachment of Respondents' U.S. property up to a limit of $1 million.  MedQuest is entitled to such an order because all four of the

respondents are foreign domiciliaries who are not authorized to do business in this state    In addition, Petitioners respectfully request emergency limited discovery of the Respondents, including immediate disclosure of all emails, texts, brochures and marketing communications to MedQuest customers.

The reasons for MedQuest's emergency petition are set forth below. As explained below, the conduct of the Trivent Respondents constitutes a breach of the parties' 2011 contract (the "Contract"). In that agreement, MedQuest agreed to introduce its U.S. customers to Trivent, which agreed to provide web-based storage, record retrieval, summaries of medical records and customer support.

Trivent has engaged in unfair competition, unjust enrichment, tortious interference with ongoing business relationships and misrepresentation. As a result of this tortious conduct and breach of contract, MedQuest seeks an emergency injunction pursuant to AAA Rule 39.

### **Background:  MedQuest is an Established Medical Legal Firm**

MedQuest Ltd. is a medico-legal expert, medical record retrieval, medical organization and summary firm formed and created by attorney Elliot Stone in 1983. Stone is a leader and innovator in the field. He formed and registered a trademark for Record Reform ®, a MedQuest subsidiary which retrieves, stores, analyzes and summarizes medical records. Record Reform's customers are personal injury lawyers who require summaries, record storage, organization and synopses of voluminous medical records along with other services. MedQuest's Record Reform branch contracts out voluminous medical records to teams of physicians who provide online summaries and chronologies for busy personal injury lawyers. MedQuest also provides other services, including an expert locating service, pursuant to which medical experts are located and recommended for personal injury lawyers throughout the country. Over the past eleven years,

3

MedQuest's Record Reform branch had, at its peak, created and built up a loyal client base of over 3,000 firms and 7,000 individual lawyers throughout the United States. Throughout this application, MedQuest and its Record Reform division will be used interchangeably.

**The Cross Marketing and Sales Agreement with Trivent**

In 2011, MedQuest contracted with Trivent Systems Incorporated, a Pennsylvania corporation, and Trivent Systems PVC Ltd., an Indian company, for the provision of remote medical records storage and summary services. Pursuant to their contract, Trivent serviced MedQuest's attorney customers through the MedQuest web portal. Trivent provided remote offshore medical services in India to review, organize and summarize the medical records provided by MedQuest's attorney customers. The Contract provides that the customers would be sourced by MedQuest, which had located and contracted with the customers itemized on an appended customer contact list. Trivent agreed to provide back office support and process orders for MedQuest customers through the latter's webpage. For example, the Contract provides that "Trivent shall provide MedQuest with IT assistance at no additional cost, to enable MedQuest's website to process orders for medical records support services, including delivery of completed work product and related functionalities." (Contract, ¶3.1) A copy of the Cross Marketing and Sales Agreement is annexed to this petition as Exhibit A.  Thus the contract contemplated customer-facing transactions through the MedQuest web portal.  This is because MedQuest built up a loyal base of over 7,000 attorney customers over the course of eleven years.  These customers were not familiar with Trivent.  They contracted with MedQuest.

Under the Agreement, Trivent agreed to provide MedQuest customers with customer support, and to provide sufficient data communications connectivity to meet their needs. Trivent

4

further agreed not to grant rights to any other expert company to market and/or sell medical records support services to law firms or lawyers.

To be sure, Trivent had been in the business before joining forces with MedQuest, just on a much smaller scale.  However, Trivent had been unable to break into the U.S. legal market without the sales and marketing expertise and industry experience of MedQuest, whose principal is a licensed attorney.

The parties agreed to divide up net revenue on a 50%-50% basis, less an 8% subtraction for MedQuest's expenses. The contract called for automatic renewal on March 10 of any year in which MedQuest generates gross revenues which exceeded 15% of the prior year's revenues.  In the event of termination, Trivent would pay MedQuest post-termination tail fees of 100% of net revenues for during the transitional period of one-year, 50% tail in year two and 25% tail fee in year three.

**The Unraveling of the Business Relationship**

In late 2021/early 2022 Sam /Trivent approached MedQuest about a potential buyout of MedQuest. The principals discussed a potential valuation of the company in excess of $7 million, as it generated over $8 million in gross annual revenue. However, the parties could not agree on a buyout price. Discussions later resumed about Trivent solely purchasing the Record Reform division without success. On or about January 10, 2022 Trivent purported to give the required 60 day notice of contract termination. However, this notice was invalid, as Section 2.1 of the parties' contract provided for automatic renewal on an annual basis provided that the income increased by at least 15 % on an annual basis. This 15% annual increases was in fact met and exceeded by MedQuest in March 2022 (17% increase).

5

Attempts were made to draw up a new contract. While the parties attempted to negotiate a new understanding, Trivent would not agree to a clause that prohibited both them and affiliates from soliciting Record Reform clients. Talks ended in summer of 2022 as Trivent's true intentions became apparent. The Trivent Respondents decided that it would be more economical for them to simply help themselves to MedQuest's customers rather than pay for them.  The Trivent Respondents unilaterally shut down MedQuest's access to its customers' data.  This was done without notice or warning.  Nor did MedQuest have an opportunity to migrate its customer data to another portal.  Then the Trivent Respondents began to poach MedQuest's customers. This conduct is continuing right now.

**The Trivent Respondents Are Engaged in Direct Solicitation of MedQuest Clients**

In August 2022, Trivent simply turned off the spigot on MedQuest customer information. Effective in August, MedQuest's access to confidential medical records of thousands of lawyers was unilaterally terminated without notice or warning. As a result, thousands of lawyers throughout the U.S. were abruptly denied access to their clients' information for which they had paid MedQuest's Record Reform division, which then paid Trivent.

Panic ensued, and is still continuing to this day. MedQuest's principals are currently receiving frantic emails and telephone calls every day from personal injury lawyers demanding access to their clients' confidential information. Numerous lawyers are currently unable to comply with court-ordered deadlines due to Trivent's unilateral cutoff of MedQuest access to its customer's data.  Lawyers throughout the United States are unable to prepare their cases for trial or settlement.  The lawyers' underlying clients are being  prejudiced today by their sudden lack of access to their medical records.  Clients are being harmed.  Lawyers are being humiliated by being forced to explain to impatient and uncomprehending judges and clients why they cannot

gain access to necessary medical records having paid MedQuest's Record Reform division for the service. Customers became irate.

But the Trivent Respondents were not content merely to cut off MedQuest access to its customer's confidential data. Cutting off access to medical records was just the first step in a three-step plan. Now the Trivent Respondents are moving in for the kill.   The Trivent Respondents are actively soliciting business from MedQuest's customers, thereby directly attempting to put MedQuest out of business.

<u>Trivent is Currently Soliciting All of MedQuest's Customers on an Ongoing, Daily Basis</u>

Trivent's marketing blitz is relentless and ongoing right now.  For example, on August 19, 2022, the Trivent Respondents sent an email to MedQuest customers advertising medical record services in direct competition with MedQuest. Trivent's August 19, 2022 solicitation read "Unload your medical records burden on us!" (See Exhibit B). Trivent's solicitation advertises that they had already been in business in direct competition with MedQuest. According to a mass solicitation sent by Trivent, "Our experience: 15,000+ cases reviewed in the last year for 1,100+ law firms." Trivent further boasts that "We set the standard for medical records services." Trivent's solicitation states that they provide the exact same services provided by MedQuest, including medical chronology, narrative summary, writing demand letters and billing summaries. (See Solicitation attached hereto as Exhibit C).

Respondent Roy Dixon himself is personally participating right now in direct solicitation of MedQuest customers. An example of Mr. Dixon's current and ongoing solicitation of MedQuest customers is attached to this application as Exhibit D.  On September 2, Mr. Dixon made a personalized solicitation of longstanding MedQuest customer Joel Brodd, a personal injury lawyer located in Wisconsin. In Dixon's email, on Trivent Legal letterhead, he writes:

7

Hi Joel

Previously we prepared your cases for a reseller MedQuest (Record Reform). We have ended that relationship.

Let me know if you would like to discuss how to *continue using the same Trivent medical team* to do your work. The prices and procedures are basically the same.

See Exhibit D hereto (emphasis added).

In his September 2 email, respondent Dixon misleadingly told a MedQuest customer that MedQuest, which had founded and originated the business model, was merely a "reseller."  And he invited the customer to simply "continue using the same Trivent medical team, " misleadingly implying that the transition is merely cosmetic.

In response to Dixon's solicitation, MedQuest customer Joel Brodd objected.   Brodd responded that:

> "The termination of your relationship with Record Reform has in fact had *a significant effect on my practice*. I have a number of ongoing cases with Record Reform and have an *immediate need to be able to access my data* and my work product so that it can be updated. I have been advised by Record Reform that my data and my work product is now inaccessible to me, as well as inaccessible to Record Reform, due to *Trivant Legal's refusal to release my data* and my work product to the company I hired to perform the work."

See Exhibit D hereto (emphasis added).

Thus, the Trivent Respondents have cut off MedQuest's access to their customers' confidential material, which consists of medical records of their own clients.  These lawyers, like Brodd, "have an immediate need to be able to access my data and my work product."  But that is of no moment to respondents.  They have no concern for the effect of their aggressive and unlawful business tactics on the underlying customers, or their injured clients.  The Trivent Respondents are currently directly soliciting MedQuest's customers, in contravention of the

8

contract and their common law obligations.  And Trivent's unfair competition is directly harming

MedQuest's lawyer customers.  But that's not all.  Trivent's conduct is harming the lawyers'

*clients* as well.  And it is harming MedQuest.  Every day that passes brings MedQuest and its

customers closer to the precipice of irreversible disaster.

The energetic Mr. Dixon and colleagues are actively soliciting other MedQuest customers

as these words are being written.  A copy of Dixon's September 6, 2022 solicitation is attached

to this application as Exhibit E. In it Respondent Roy Dixon writes:

> We wish to notify you of the termination of the reseller agreement
> between Trivent Legal and MedQuest/Record Reform . . . Since
> Trivent Legal has been the ultimate provider of Record Reform
> work since 2011, we wish to thank you for being a customer and
> assure you that we can continue to provide you with the quality
> product and service you have come to expect with no disruption.

Mr. Dixon has made a veiled threat to destroy customer records if they do not provide

their business to Trivent: "If we do not hear from you by September 30, 2022, we will assume

you have no need to access any records in the custody of Trivent Legal." See Exhibit E.

On September 20, 2022, Trivent approached another longstanding MedQuest customer

with the email attached hereto as Exhibit K.  In their solicitation, the Trivent Respondents wrote:

> "Please be informed that Record Reform was a reseller for Trivent Legal for 11
> years, but the contract wasn't renewed this year.  Trivent Legal has retained the
> previous cases that you have sent to Record Reform and can be found in the
> Trivent Legal portal but the case files will be there only until Nov 2022. "

This email is misleading because Record Reform was not a reseller, but originated the

service model and business relationship. In addition, this email employs high-pressure, unethical

tactics by threatening to delete or remove the client medical records, which the client prepared

and merely stored on the Record Reform platform, absent entering into a direct relationship with

9

Trivent.  This is not fair competition.  This is a shake-down.  Trivent is holding MedQuest, its customers and their clients over the proverbial barrel.

These are not the only instances of misconduct and direct solicitation by the Trivent respondents.  These are only the instances in which they have been *caught*.  Obviously the Trivent respondents are not cherry-picking a few MedQuest customers.  They are trying to poach all of MedQuest's customers and put it out of business.

In addition to directly soliciting MedQuest customers, Trivent has also attempted to mislead them by the use of MedQuest's registered trademark of Record Reform. A trademark registration for Record Reform was filed with the U.S. Patent and Trademark Office. Attached hereto is an email from MedQuest's CEO Elliot Stone to Trivent complaining of the theft and misuse by Trivent of MedQuest's intellectual property, specifically the record reform trademark. See Exhibit F.

### Step 3 -Trivent Has Confused Customers by Using A Competing Business' Name

In addition to directly soliciting and threatening MedQuest customers, Trivent has further caused confusion by affiliating with Med<u>sum</u>, a Wyoming company (where principals need not be disclosed) incorporated in 2020, run by Trivent's agents.  For example, annexed hereto as Exhibit G is a printout of a blog at the webpage Triventmedsum.blogspot.com. Upon information and belief, Medsum Legal is directly competing in preparing medical chronologies and narrative summaries and is also soliciting MedQuest customers. Attached hereto as Exhibit H is a solicitation sent to a MedQuest customer from Medsum Legal LLC which offers medical chronologies and demand letters prepared by "our physician partners in India." According to Medsum, "our team of over 200+ MDs reduce organize and review charts for $25/hour a billable expense within a week's time, which is much faster than Record Reform..." See Exhibit H. The

overlap between Medsum and Trivent is further demonstrated by the Google search result annexed hereto as Exhibit I and the Google Map printout annexed hereto as Exhibit J. Upon information and belief, orders placed through Medsum go right to the Trivent portal.

In short, the Trivent Respondents are currently engaging in a campaign to destroy MedQuest's business and bring it to its knees. As these words are being written, Trivent's agents, including Respondents Dixon and Shanmugam, are directly and tortiously soliciting MedQuest customers and destroying the business network that MedQuest has painstakingly built, one relationship at a time, over the past eleven years. Trivent shut off the spigot to medical information such that MedQuest can no longer access it. But Trivent is offering that same information directly to the customer base that MedQuest painstakingly built over the course of over a decade. To make matters worse, the Trivent Respondents are threatening, in writing, to remove or delete the records of MedQuest's customers unless they  terminate their relationship with MedQuest  and come over to give their business to Trivent.

This is unfair competition.  This is tortious conduct.   The Trivent Respondents' conduct constitutes breach of contract, unfair competition and tortious interference with contractual business relationships. As a direct result of Trivent's tortious conduct, MedQuest is hemorrhaging customers who are terminating their relationship on a daily basis.  MedQuest calculates that dozens of customers have left resulting in a loss of approximately $280,000 for September alone. MedQuest estimates that its September business is off approximately 75% compared to the same period last year. Unless an injunction is promptly issued, MedQuest's Record Reform division will soon be out of business.

In addition, because the Trivent respondents hold assets in India, they should be directed to post a bond of $1 million as security for the damages it is deliberately causing on a daily basis.

## MedQuest Causes of Action

As explained above, the conduct of the Trivent Respondents has been inequitable, unethical, illegal and tortious. And their conduct has violated multiple provisions of the parties' contract.

Trivent unlawfully: (a) cut off MedQuest's access to its customers' confidential medical information; (b) engaged in direct solicitation of MedQuest customers; and (c) engaged in misleading misrepresentations to those customers.

The American Arbitration Association is a forum of equity.  Arbitrators are authorized to seek justice.  Arbitrators are not bound to formal rules of evidence or legal authorities. Nonetheless, MedQuest is prepared to allege and prove multiple serious and egregious violations of the law by the Trivent respondents.

## Breach of Contract

Trivent breached the parties' contract.  The contract provides that Trivent will "enable *MedQuest's website* to process orders for medical records support services, including delivery of completed work product and related functionalities."[1]  Trivent is contractually obligated to provide connectivity such that MedQuest can access its customer's data.[2]  Thus the business model is that MedQuest directly interfaces with its customers.  Trivent agreed to provide remote, back office support for MedQuest's customers.  This arrangement was designed to continue for two years after the transitional period till termination.  But Trivent has unilaterally cut off MedQuest's access to the portal and directly and indirectly (through affiliates) poached its customers.

---

[1] Contract, Exhibit A hereto, ¶3.1.
[2] See Contract, Exhibit A hereto, at ¶3.2, 3.3.

Trivent is further obligated not to compete directly with MedQuest or to directly contact its customers.  The contract further provides that "Trivent shall not maintain any data and/or medical or other records resulting from medical records support services on its premises for sale or use by anyone other than MedQuest or the original requesting customer."[3]

Trivent breached these terms. Trivent violated the contract by purporting unilaterally to terminate it in a year in which MedQuest's revenues have risen in excess of 15%. Under ¶2.1 of the contract, it was self-executing and automatically renewed due to MedQuest's revenue gains over the preceding year.

But even in situations in which termination is justifiable, cutting off access to customers' medical records is not. Trivent claims that it is entitled to additional fees.  But it had no right to unilaterally pull the plug on MedQuest's access to its customers' medical data. The termination provisions of the contract clearly provide that the parties shall continue to service MedQuest's customers in the post termination period.  In addition, MedQuest and Trivent agreed to share in post-termination fees of net revenues during the two-year tail period following the contract termination.[4]  The contract clearly contemplates an orderly and mutually respectful unwinding of the business relationship, with minimal disruption to customer interests.  Trivent did not do this.

The foregoing conduct by the Trivent Respondents and affiliates violated the Agreement. Moreover, Trivent's aggressive and misleading solicitation of MedQuest's customer poses an existential threat to the continued existence of MedQuest's Record Reform division and threatens to put it out of business. Immediate relief is required.

**<u>Unfair Competition</u>**

---

[3] Contract, Exhibit A hereto, at ¶5.
[4] Contract, ¶6.7.

13

As explained above, the Trivent Respondents have unilaterally and immediately terminated MedQuest's access to its confidential customer data without warning. The Trivent Respondents are simultaneously and aggressively soliciting Record Reform customers both directly and indirectly through affiliates, all of whom are attorneys with busy schedules and urgent needs for their clients' medical records. Moreover, Trivent is soliciting these customers by use of misleading and fraudulent misrepresentations, often distorting the relationship between MedQuest and Trivent. This is unfair competition. The elements of unfair competition are as follows:

    a.    Acts or omissions by defendants that proximately caused a misappropriation; and

    b.    The property or benefit misappropriated.

"New York's law of unfair competition is a broad and flexible doctrine, which encompasses any form of commercial immorality, or simply as endeavoring to reap when one has not sown. Accordingly, a court may sustain an unfair competition claim even if the parties are not actual competitors. Instead, the crucial element is the misappropriation of another's commercial advantage." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2021 U.S. Dist. LEXIS 117230, at *37-38 (S.D.N.Y. June 23, 2021).  Here, the respondents have blatantly misappropriated the claimant's commercial advantage.  For the foregoing reasons, the conduct of the Trivent Respondents is unfair competition.

**Tortious Interference with Contractual Relationships**

MedQuest, through its Record Reform subsidiary, is an innovator in the field of medical record organization, having essentially exploded the field over a decade ago. It developed innovative products that Trivent adopted thanks to its CEO's legal background. MedQuest has built up a portfolio of over thousands of loyal customers, many of whom have been with

14

MedQuest for many years. As explained by the various emails attached hereto, and in the accompanying affidavit of Elliot Stone, the marketing and solicitation of customers has traditionally been handled by MedQuest over the course of over a decade. These are longstanding relationships built upon over a decade of client loyalty.

But the Trivent Respondents are undermining those relationships by cutting off MedQuest's access to customer data and by soliciting them. In so doing, the Trivent Respondents are directly and tortiously interfering with MedQuest's contractual relationships with its customers. The elements of tortious interference with a contractual relationship are:

    **a.** The existence of a valid contract between the Plaintiff and a third party;
    **b.** The Defendant's knowledge of the contract;
    **c.** The Defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and
    **d.** Damages to Plaintiff.

Here, MedQuest, through its Record Reform subsidiary, has contractual relations with thousands of attorney customers.  The Trivent respondents are actively interfering with those relationships.  In fact, the Trivent respondents are threatening to remove or delete the customers' medical records unless they drop MedQuest and contract directly with Trivent.  The customers are complaining that they cannot comply with their own obligations with their own clients. MedQuest has contractual obligations to these customers.

For the foregoing reasons, the Trivent Respondents have tortiously interfered with MedQuest's customers.

**<u>Unjust Enrichment</u>**

Unjust Enrichment is an equitable claim.  Its elements are:

    **a.** That the other party was enriched;
    **b.** At that party's expense; and

15

**c.** That it is against equity and good conscience to permit the other party to retain what is sought to be recovered.

The parties engaged in preliminary negotiations for the buyout of MedQuest's decade-old business. The Trident respondents were dissatisfied with the terms of sale offered by MedQuest's principal, Elliot Stone.  So they decided not to buy the company.  They decided to simply set up competing affiliates offering better terms steal its customers and put it out of business. That is inequitable conduct.  And the Trivent Respondents' misconduct is directly harming MedQuest. Accordingly, MedQuest has established a prima facie case of unjust enrichment.

## Misrepresentation

In addition to tortiously interfering with MedQuest's customers, the Trivent Respondents are guilty of misrepresentations. They have misled MedQuest customers about the relationship between MedQuest and Trivent, and have unfairly used high pressure sales tactics to induce MedQuest customers to terminate their relationship.

For example, respondent Roy Dixon has misleadingly told MedQuest customers that MedQuest was a "reseller." See Exhibit D hereto. However, MedQuest is not a mere reseller. Rather MedQuest originated the concept and all of the customer relationships at stake here.

In addition, Trivent respondent Roy Dixon has threatened MedQuest customers that if they do not provide their business to him that Trivent will "assume you have no need to access any records in the custody of Trivent Legal." See Exhibit E hereto. That is a veiled threat to remove or delete medical records belonging to the customers' clients. That is unfair and misleading and is a high pressure unethical sales technique. It's a shake-down.  On information and belief, Trivent is also using its affiliates to siphon business away through anti-competitive predatory pricing.

16

The tort of fraudulent misrepresentation is established when the plaintiff alleges and proves the following elements:

    **a.** A misrepresentation or a material omission of fact which was false and known to be false by Defendant;

    **b.** That the misrepresentation was made for the purpose of inducing Plaintiff to rely upon it;

    **c.** Justifiable reliance by Plaintiff on the misrepresentation; and

    **d.** Injury.

The tort of negligent misrepresentation can be established by the following conduct:

    **a.** The existence of a special or privity-like relationship imposing a duty on the Defendant to impart correct information to the Plaintiff;

    **b.** That the information was incorrect; and

    **c.** Reasonable reliance on that information.

The respondents' conduct clearly constitutes both of these torts, and should be enjoined.

## Trademark Infringement

The Trivent Respondents are unfairly using petitioners' registered trademark of "Record Reform" in order to solicit MedQuest's customers. This is unlawful as this is a registered trademark filed with the U.S. Patent and Trademark Office. Federal and state trademark law provide that a court may enjoin the use of a registered trademark when it engages in unfair competition at risk of causing confusion to consumers.

Trademark infringement is shown when the respondent:

    a. Without the registrant's consent, uses any reproduction, counterfeit, copy, or colorable imitation of a mark registered under the statute in connection with distributing, selling, offering for sale, or advertising goods or services where the use is likely to cause confusion about the source of origin of the goods or services; and

    b. Reproduces, counterfeits, copies, or colorably imitates a mark registered under the statute and applies the reproduction, counterfeit, copy, or colorable imitation to labels, signs prints, packages, wrappers, receptacles, or advertisements intended for use on or in connection with selling or distributing goods or services in New York.

17

For the foregoing reasons, the emergency arbitrator should enjoin the respondents from continued use of MedQuest's trademark.

<u>MedQuest is Entitled to An Order of Attachment Under CPLR Article 62</u>

MedQuest further seeks an order of attachment under CPLR Article 62. All four respondents are residents of foreign jurisdictions, and respondent Trivent Systems Pvt. Ltd. is located in India. Claimant is concerned that the respondents are likely to secrete assets abroad. If respondents secrete assets in India, the ultimate arbitration award and resulting judgment could prove to be unenforceable, thereby frustrating the purpose of the arbitration provision in the parties' contract.

CPLR 6201 provides for attachment when a defendant resides outside the state:

6201. Grounds for attachment. An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or

Here, the Respondents are all non-domicilliaries residing outside of the state. None of the respondents is authorized to do business in this state. An arbitrator is empowered both by the contract and by law to grant any relief that would be available to a judge. Accordingly, the arbitrator may issue an order of attachment. MedQuest is ready to seek court confirmation of any such order.

In addition, Petitioners respectfully request emergency limited discovery of the respondents.

<u>Notice Requirement of AAA Rule 39</u>

18

In compliance with AAA Rule 39, the Respondents have received notice of the requested emergency relief herein, via email.

<u>Conclusion</u>

For the foregoing reasons, and for the reasons set forth in the accompanying affidavit of Elliot Stone, MedQuest Ltd. respectfully requests the issuance of a temporary injunction pursuant to AAA Rule 39. MedQuest requests that this injunction enjoin the Trivent Respondents to immediately restore MedQuest with access to all customer data, and any summaries or synopses of them or related work product. In addition, MedQuest seeks an injunction immediately enjoining the MedQuest respondents from soliciting any of its customers. In addition, Petitioners respectfully request emergency limited discovery of the respondents, including immediate disclosure of all emails, texts, brochures and marketing communications to MedQuest customers.

MedQuest understands that Trivent has a claim for money damages against it. But money damages are just that: money damages. On the other hand, MedQuest's Record Reform division will no longer be in business unless Trivent's tortious and unethical business conduct is enjoined immediately, permitting MedQuest to continue to ply its business model.


Dated:  New York, New York
        September 30, 2022

                                    Respectfully submitted,

                                    MOUND COTTON WOLLAN & GREENGRASS LLP


                                    By: <u>*/s/Barry Temkin*</u>
                                        Barry R. Temkin
                                        One New York Plaza
                                        New York, NY 10004
                                        (212) 804 4221

                                    19

*Attorneys for Petitioner*
MedQuest Ltd.

TO:

TRIVENT SYSTEMS INCORPORATED,
TRIVENT SYSTEMS PVT, LTD. AND
SENGUTTUVAN S. SAM SHANMUGAM
1011 Brookside Road, Suite 150
Allentown, PA 18106

Roy Dixon
1011 Brookside Road
Allentown, Pennsylvania 18106


Jeffrey S. Fleischaker
Engel, Wiener, Bergstein & Fleischaker
825 N. 12th Street
Allentown, PA 18102
610-439-1235 (Fax)

20

## **VERIFICATION**

Elliot Stone, of full age, an attorney at law of the State of New York, upon his oath deposes and swears as follows under penalty of perjury:

I am the CEO of petitioner MedQuest Ltd. I have reviewed the foregoing petition for emergency relief pursuant to AAA Rule 39 and I am familiar with its contents. I affirm that the foregoing statements are true and correct.

*Elliot W Stone*

_____

Elliot Stone

September 30, 2022

21

# TAB A

<u>CROSS-MARKETING AND SALES AGREEMENT</u>

This Agreement is entered into as of March    , 2011, by and between **TRIVENT SYSTEMS INCORPORATED,** a Pennsylvania corporation, having an address at c/o Mr. Senguttuvan Shanmugam, 2274 Eldemere Circle, Macungie, PA 18062, **TRIVENT SYSTEMS PVT. LTD.,** an Indian company, having an address at 75, II Floor, M Block, III Avenue, Anna Nagar East, Chennai, Tamil Nadu 600 102 India (collectively, "TRIVENT"), and **MEDQUEST LTD.,** a New York corporation, having an address at 116 East 30th Street, New York, NY 10016 ("MEDQUEST").  TRIVENT and MEDQUEST are sometimes each referred to as a "Party" and collectively as the "Parties."

<u>RECITALS</u>

A.      TRIVENT has established a business model pursuant to which users may electronically request medical records support services such as medical chronologies, record indexing and physician case opinions (collectively, "Medical Records Support Services") by scanning, downloading and sending documents to TRIVENT's offices in India, which perform the Medical Records Support Services; and

B.      MEDQUEST is a leading nationwide provider of medical expert services ("Medical Expert Services") to the legal industry; and

C.      TRIVENT desires MEDQUEST to package and sell Medical Records Support Services and other value-added services to MEDQUEST's current and prospective customers, which are not currently TRIVENT customers listed on the TRIVENT Customer Schedule annexed hereto[1] (collectively, "MEDQUEST Customers"); and

D.      MEDQUEST desires TRIVENT's sales representatives to sell Medical Expert Services to TRIVENT customers;

NOW THEREFORE, in consideration of the foregoing premises and the mutual agreements and covenants contained herein, the parties hereto agree as follows:

1.      **APPOINTMENT.**

1.1     TRIVENT hereby grants MEDQUEST the exclusive right to sell Medical Records Support Services (i) to MEDQUEST Customers and (ii) within the marketing channel served by companies offering medical expert evaluation services and testimony, and MEDQUEST accepts such authorization, subject to the terms and conditions of this Agreement.  The Parties acknowledge that TRIVENT is presently in strategic discussions to acquire the business of Med League, a New Jersey nurse and medical expert search firm ("Med League").  Should the transaction be completed on or before June 1, 2011, TRIVENT may sell Medical Records Support

---

[1] There may be customers on the TRIVENT Customer Schedule which are also currently customers of MEDQUEST. TRIVENT shall indicate on the Schedule which of these customers may be solicited by MEDQUEST.

Services through Med League without breaching MEDQUEST's exclusivity rights under this Agreement.

1.2    MEDQUEST hereby grants TRIVENT the right to sell Medical Expert Services (i) to TRIVENT customers and (ii) within the marketing channel served by companies offering medical records support services also offered by TRIVENT, and TRIVENT accepts such authorization, subject to the terms and conditions of this Agreement.

2.    **TERM AND TERMINATION.**

2.1    The initial term ("Initial Term") of this Agreement shall be for a period commencing on the date of this Agreement and terminating two (2) years following the initial order for Medical Records Support Services through TRIVENT's link on MEDQUEST's website.  This Agreement shall automatically be renewed for successive one (1) year terms under the same terms and conditions unless either Party shall give written notice of non-renewal to the other Party at least sixty (60) days prior to the expiration of the Initial Term or the expiration of any subsequent renewal term.  The term of this Agreement shall be automatically renewed for an additional year upon expiration of the Initial Term if MEDQUEST generates Gross Revenues (as defined in Section 6.1 below) of at least $1,000,000 ("Base Minimum Revenues") during the second year of the Initial Term.  The term of the Agreement shall continue to be automatically renewed for each successive year thereafter if MEDQUEST exceeds the prior year's Base Minimum Revenues, which shall increase by 15% annually.  By way of example, the term of this Agreement shall automatically renew for a fourth year if Gross Revenues in the third year exceed $1,150,000, and shall automatically renew for a fifth year if Gross Revenues in the fourth year exceed $1,322,500.

2.2    Notwithstanding the foregoing, either Party may terminate this Agreement for Cause upon thirty (30) days written notice.  "Cause" shall mean (i) material breach of this Agreement after written notice and a reasonable opportunity to cure, (ii) gross negligence, including intentional illegal or deceptive practices, (iii) insolvency, liquidation, receivership or bankruptcy of a Party, or (iv) MEDQUEST's failure to pay TRIVENT any amounts due hereunder within thirty (30) days of receipt of an invoice therefor from TRIVENT, subject to Section 6.3 below.  The date upon which this Agreement expires pursuant to a non-renewal notice or is otherwise terminated is referred to as the "Termination Date."  In the event that this Agreement expires or is terminated, other than for Cause, MEDQUEST shall be entitled to continue providing MEDQUEST Customers with access through its website to TRIVENT's Medical Records Support Services, and TRIVENT shall be entitled to continue providing its customers with Medical Expert Services, for a period of one (1) year following the Termination Date ("Transition Period"), under the same fee structure and payment terms utilized by the Parties prior to the Termination Date.  In the event that this Agreement is terminated for Cause, except in the case of Section 2.2(iii), there shall be no Transition Period but the Parties shall be entitled to the Tail Fees described under Section 6 below.  In the event that this Agreement is terminated for

Cause by reason of Section 2.2(iii), there shall be no Transition Period and no Tail Fee Period.

3.   **OBLIGATIONS OF TRIVENT.**

3.1   TRIVENT shall provide MEDQUEST with IT assistance, at no additional cost, to enable MEDQUEST's website to process orders for Medical Records Support Services, including delivery of completed work product and related functionalities.

3.2   TRIVENT shall provide MEDQUEST Customers with Level II customer support in connection with Medical Records Support Services, at no additional cost.

3.3   TRIVENT shall provide sufficient data communications connectivity to meet the needs of MEDQUEST Customers for access to the Medical Records Support Services.

3.4   TRIVENT shall adhere to all guidelines specified by any and all state and federal legislative bodies maintaining jurisdiction over activities contemplated to be performed under this Agreement and shall not release information requested by MEDQUEST or MEDQUEST Customers to anyone other than MEDQUEST and/or the requesting MEDQUEST Customer unless required to do so by a court of competent jurisdiction.

3.5   TRIVENT shall perform its obligations set forth throughout this Agreement to a standard not less than the level of performance provided by TRIVENT to its own customers.

3.6   TRIVENT agrees that it shall not grant rights to any other company, firm or person engaged in the business of providing medical expert services, to market and/or sell Medical Records Support Services to law firms, lawyers, insurance companies and other third parties (i) during the Initial Term and (ii) for each one-year period thereafter, provided that MEDQUEST achieves the minimum sales revenue for the immediately prior year as set forth in Schedule B.

3.7   In the event TRIVENT enters into negotiations for a marketing or sales agreement for Medical Records Support Services, or a merger or business acquisition agreement, with a company, firm or person whose primary business is other than offering expert evaluation services and testimony, TRIVENT will confer with MEDQUEST prior to finalizing any such agreement.

4.   **OBLIGATIONS OF MEDQUEST.**

4.1   MEDQUEST shall provide TRIVENT customers with Level II customer support in connection with Medical Expert Support Services, at no additional cost.

4.2     TRIVENT shall generate customer invoices for MEDQUEST Customers obtaining Medical Records Support Services, provided, however, that MEDQUEST shall maintain sole responsibility for collection of any and all fees.

4.3     MEDQUEST shall offer TRIVENT products on MEDQUEST's website in a mutually agreed upon manner.

4.4     In any marketing of Medical Records Support Services, MEDQUEST shall not make any representation or warranty, with respect to Medical Records Support Services, broader than or inconsistent with any representation or warranty made by TRIVENT with respect to Medical Records Support Services in its then-current printed or electronic collateral material or with other written descriptions provided by TRIVENT to MEDQUEST from time to time hereunder.

4.5     MEDQUEST agrees not to solicit TRIVENT's competitors during the term of its exclusivity under this Agreement.  MEDQUEST may negotiate with other medical records support providers during the six-month Transition Period.

5     **RESTRICTION ON USE.**   Notwithstanding anything else to the contrary in this Agreement, TRIVENT shall not maintain any data and/or medical or other records resulting from Medical Records Support Services on its premises for sale to or use by anyone other than MEDQUEST or the original requesting Customer.  TRIVENT shall have the right and obligation to maintain Medical Records Support Services data and resulting records sufficient enough to assure compliance with state and federal laws governing the use and dissemination of medical or other records.

6     **FEES AND PAYMENTS.**

6.1     TRIVENT shall provide Medical Records Support Services in accordance with the schedule set forth in Schedule A ("Cost of Services").  The Parties shall subtract the Cost of Services from the gross fees actually collected from the customers ("Gross Revenues") to determine the net revenues ("Net Revenues") attributable to each job order.  Eight (8%) Percent of total Gross Revenues shall be subtracted from Net Revenues and paid to MEDQUEST to reimburse it for general, administrative and sales expenses ("SGA Expenses").  The remaining balance after payment of SGA Expenses ("Net Profit") shall then be divided equally between MEDQUEST and TRIVENT.  By way of example, if a particular purchase order incurs a Cost of Services of $60 and generates $100 in Gross Revenues, (i) Net Revenues shall equal $40 ($100 – $60), (ii) SGA Expenses shall equal $8 (.08 x $100), and (iii) each Party shall one-half of the Net Profit of $32, or $16 each (($40 – $8) x .50).  This computation of Net Profit shall continue in effect during the Transition Period, if applicable; provided, however, that there shall not be an 8% deduction for SGA Expenses during the Tail Fee Period described in Section 6.7 below.

6.2     MEDQUEST shall provide TRIVENT by the tenth (10th) day of each month following the end of the month in which MEDQUEST is in receipt of Gross Revenues, with a monthly transactional report ("Transactional Report") summarizing

all job orders by applicable client name, client number and aggregate billings for that month, and including a breakdown of Net Revenues, SGA Expenses and the portion of Net Profit payable to TRIVENT.  TRIVENT shall then submit an invoice to MEDQUEST on the basis of the Transactional Report.  This payment protocol shall continue in effect through the expiration of any Transition Period.

6.3     MEDQUEST shall pay TRIVENT invoices within ten (10) days from receipt thereof. If there are any good faith disputes related to an invoice, MEDQUEST shall pay the undisputed portion of the invoice on a timely basis and notify TRIVENT in writing of MEDQUEST's basis for withholding payment of the disputed amount.   Upon receipt of MEDQUEST's dispute notice, TRIVENT and MEDQUEST shall work together in good faith to resolve such dispute in a prompt and mutually acceptable manner.  If the dispute is not resolved within thirty (30) days after MEDQUEST's receipt of TRIVENT's dispute notice, the Parties shall resolve the issue pursuant to the provisions of Section 16 below.  MEDQUEST shall pay any disputed amounts within five (5) business days after all questions have been resolved.

6.4     TRIVENT and/or its affiliates shall be solely responsible for payment of all taxes imposed in India, including, without limitation, any charges, fees, duties, levies, imposts, rates or other assessments imposed by any federal, state, or local taxing authority, including, but not limited to, income, profits, gross receipts, excise, property, license, capital stock, franchise, transfer, payroll, withholding, social security, other employment tax or other taxes, and any interest, penalties or additions attributable thereto assessed or levied against TRIVENT and/or its affilaites in respect of the services performed under this Agreement ("Taxes").  TRIVENT shall hold MEDQUEST, its officers, directors, employees and agents harmless from any non-payment or underpayment of such Taxes.

6.5     The Cost of Services payable by MEDQUEST Customers (as set forth in Schedule A) shall be equal to or better than the fees charged by TRIVENT to other distributors/resellers of the same products and services to the legal market.

6.6     With regard to the sale of Medical Expert Services by TRIVENT, MEDQUEST contemplates paying (i) to TRIVENT's sales representatives $25 for each Curbside Counsel free evaluation order solicited by a TRIVENT salesperson ("Evaluation Fee") and (ii) to TRIVENT 1/3 of the net profit (gross fees less fees paid to medical experts) on all fees collected in connection with medical expert reviews attributable to orders solicited by a TRIVENT salesperson, including any additional reviews attributable to such client, subject to Section 6.7 below; provided, however, that the $25 Evaluation Fees with respect to such client shall terminate once the salesperson is no longer representing or otherwise affiliated with TRIVENT.  Final compensation arrangements and reporting requirements shall be determined by the Parties within thirty (30) days of the date of this Agreement.

6.7     Except as otherwise provided in Section 2.2, following termination of this Agreement and expiration of the Transition Period, TRIVENT shall pay MEDQUEST post-termination fees ("Tail Fees") of (i) 50% of Net Revenues from

all sales of Medical Records Support Services to MEDQUEST Customers during the one-year period following the expiration of the Transition Period and (ii) 25% of Net Revenues from all sales of Medical Records Support Services to MEDQUEST Customers during the immediately succeeding one-year period (the two-year period immediately following the expiration of the Transition Period is referred to as the "Tail Fee Period"). At the expiration date of the one-year Transition Period, (i) MEDQUEST shall submit a list of protected customers, which will include all MEDQUEST Customers that have ordered Medical Records Support Services during the one-year period prior to such date and (ii) MEDQUEST shall remove the Medical Records Support Services link/feature from its website. By the 10th day of each month during the Tail Fee Period, TRIVENT shall submit a monthly report of Gross Revenues collected from MEDQUEST Customers during the prior month. The report shall list the name of each Customer, Gross Revenues collected from such Customer and the Net Revenues. All Tail Fee payments due to MEDQUEST shall be paid within thirty (30) days of the end of the month for which such report is required to be delivered to MEDQUEST. These Tail Fee provisions shall be subject to the inspection rights set forth in Section 17.4 hereunder.

6.8   Except as otherwise provided in Section 2.2, following termination of this Agreement and expiration of the Transition Period, MEDQUEST shall pay tail fees to TRIVENT of (i) 1/3 of the net profit on all fees collected in connection with medical expert reviews attributable to orders solicited by a TRIVENT salesperson during the one-year period following the expiration of the Transition Period and (ii) 1/6 of the net profit on all fees collected in connection with medical expert reviews attributable to orders solicited by a TRIVENT salesperson during the immediately succeeding one-year period.

7.   **REPRESENTATIONS AND WARRANTIES.**   Each Party represents and warrants to the other Parties that such Party has full power and authority to enter into this Agreement, that all requisite approval was obtained prior to entering into this Agreement, and this Agreement is binding upon such Party in accordance with the terms and conditions herein.

8.   **INDEMNITY.**

8.1   TRIVENT shall defend, protect, indemnify and hold MEDQUEST harmless from and against all costs, expenses and damages, including reasonable attorney's fees, attributable to any claim that use of any Medical Records Support Services provided hereunder infringes upon any proprietary or contractual right of a third party or breach of applicable law, provided that (i) MEDQUEST gives prompt written notice of any such claim, and (ii) TRIVENT is given full control over the defense of such claim and receives the full cooperation of MEDQUEST in the defense thereof. The obligation under this section shall survive any termination of this Agreement. TRIVENT shall not have the right to settle any claims against MEDQUEST without MEDQUEST's prior written consent, such consent not to be unreasonably withheld or delayed.

8.2    MEDQUEST shall defend, protect, indemnify and hold TRIVENT harmless from and against all costs, expenses and damages, including reasonable attorney's fees, attributable to any claim that use of any Medical Expert Services provided hereunder infringes upon any proprietary or contractual right of a third party or breach of applicable law, provided that (i) TRIVENT gives prompt written notice of any such claim, and (ii) MEDQUEST is given full control over the defense of such claim and receives the full cooperation of TRIVENT in the defense thereof.  The obligation under this section shall survive any termination of this Agreement.  MEDQUEST shall not have the right to settle any claims against TRIVENT without TRIVENT's prior written consent, such consent not to be unreasonably withheld or delayed.

9.    **LIMITATION OF DAMAGES.**    **IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES OF ANY KIND, INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, LOSS OF DATA OR EQUIPMENT DOWNTIME, ARISING BY WAY OF CONTRACT, TORT OR OTHER CLAIMS FOR DAMAGES, EVEN IF THE PARTY IS APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.**

10.    **DEFAULT.**

10.1    Either Party (hereinafter the "Defaulting Party") shall be in default upon the occurrence of any one of the following events: (i) failure to perform any term, condition or covenant of this Agreement and such failure shall continue for a period of thirty (30) days after receipt of written notice thereof; (ii) if the Defaulting Party ceases the conduct of active business; (iii) if any proceedings under the Federal Bankruptcy Act or other insolvency laws shall be instituted by or against the Defaulting Party or if a receiver shall be appointed for the Defaulting Party or any of its assets or properties; or (iv) if the Defaulting Party shall make an assignment for the benefit of creditors.

10.2    Upon any default that remains uncured after the notice required above, the non-defaulting Party may terminate this Agreement by providing thirty (30) days written notice of its intent to do so.  Any termination shall be without prejudice to any other rights or remedies which the non-defaulting Party may have against the Defaulting Party with respect to such default, except as limited herein.

11.    **USE OF TRADEMARKS AND LOGOS; ADVERTISING.**

11.1    Neither Party shall use in any advertising, sales promotion, letterhead, publicity or other public or media communications, any trade name, trademark, service mark, logo or similar other identification or abbreviation, contraction or simulation thereof owned by the other Party without the prior written consent of the other Party.

11.2    Neither Party shall advertise or in any way publicly announce through any media that it has entered into this Agreement without the consent of the other Party.

11.3   Each Party shall have the right to review any and all materials bearing such Party's trade name, trademark, service mark, logo or similar other identification or abbreviation, contraction or simulation thereof for the purposes of exercising its right of quality control over such items.

12.   **EXCUSABLE DELAY.**   Neither Party hereunder shall be liable to the other for any delay in the time for performance of its obligations under this Agreement is such delay arises out of circumstances beyond its reasonable control, including but not limited to strikes, wars, natural disasters, equipment failure or breakdown, governmental regulation or interference, or other calamity.  In the event of any such excusable delay, the time for the performance of such obligations shall be extended for a period equal to the length of the delay.  The Party whose performance is hampered by the excusable delay shall provide written notice to the other Party as soon as reasonably possible of the occurrence of the delay, but in no event later than three (3) business days, provide a description thereof, and exercise its best efforts to remove such cause of non-performance.  All other obligations not affected by the excusable delay shall be in force and effect during the period of time that the affected obligation is suspended during the continuance of such excusable delay.  If an excusable delay arises out of equipment failure or breakdown, and such delay results in a failure of performance, which continues for a period of ninety (90) consecutive days, the non-defaulting Party, by notice in writing to the other, may state its intention to terminate this Agreement.  Upon receipt of such written notice the defaulting party will have thirty (30) days to cure such default and avoid termination.

13.   **NOTICES.**   All notices required to be given under this Agreement shall be in writing and may be delivered (i) by certified or registered mail, postage prepaid, (ii) by hand, or (iii) by any nationally recognized commercial overnight courier specifying next day delivery.  Such notices shall be mailed or delivered to the addresses set forth below or such other address as a Party may notify the other Party of in writing.  Notices shall be effective (i) if mailed, on the date three (3) days after the date of mailing or (ii) if hand delivered or delivered by overnight courier, on the date of delivery.

> To MEDQUEST:          MEDQUEST, LTD.
>                       116 East 30TH Street
>                       New York, NY  10016
>                       Attn:  Elliot Stone, Pres.
>
> To TRIVENT:           TRIVENT SYSTEMS INCORPORATED
>                       TRIVENT SYSTEMS PVT. LTD.
>                       c/o Mr. Senguttuvan S. Shanmugam
>                       2274 Eldemere Circle
>                       Macungie, PA 18062

14.   **RELATIONSHIP OF THE PARTIES.**   The parties hereto agree that the relationship of the parties created by this Agreement is that of independent contractor and not that of employer/employee, principal/agent, partnership, joint venture or representative of the other. Except as authorized hereunder, neither Party shall represent to third parties that it is the

employer, employee, principal, agent, joint venture or partner with, or representative of the other Party.

15.    **NONDISCLOSURE.**

15.1    Each Party agrees that it will use the same degree of care and discretion to avoid disclosure or dissemination of the other Party's Confidential Information to anyone other than those employees with a need to know for purposes of this Agreement as it uses with information it does not wish to have published, disclosed or disseminated. Neither Party will use the other's Confidential Information without the prior written consent of the other Party. For purposes of this Agreement, "Confidential Information" means, without limitation, any information relating to either Party's product plans, specification, designs, development, costs or trademarks, or relating to its finances, marketing plans, business opportunities, personnel, research or know-how.

15.2    The Parties agree that they have no obligation to keep confidential any information that: (i) is or becomes generally known or available by publication, commercial use or otherwise through no fault of the receiving party; (ii) is known and has been reduced to tangible form by the receiving party at the time of disclosure and is not subject to restriction; (iii) is independently developed by the receiving party; (iv) is lawfully obtained from a third party who has the right to make such disclosure; or (v) is released for publication by the disclosing party in writing.

16.    **DISPUTE RESOLUTION.**

16.1    TRIVENT and MEDQUEST understand and agree that the implementation of this Agreement will be enhanced by the timely and open resolution of any disputes or disagreements between such Parties.

16.2    Each Party agrees to use its best efforts to cause any disputes or disagreements between such Parties to be considered, negotiated in good faith, and resolved as soon as possible.

16.3    In the event that any dispute or disagreement between the Parties cannot be resolved to the satisfaction of TRIVENT and MEDQUEST within ten (10) days after either Party has notified the other in writing of the need to resolve the specific dispute or disagreement within such ten-day period, then either Party may submit the dispute for final and binding arbitration as provided in Section 16.4.  Notwithstanding the provisions of this Section 16.3, neither Party shall be required to use this dispute escalation procedure if there is an actual or alleged violation of such Party's Confidential Information, and, as to such actual or alleged violation, either Party reserves all rights to seek judicial remedies and relief, including, without limitation, any injunctive relief that may be granted by any court of competent jurisdiction, without requirement of posting a bond.

16.4   Any dispute between the parties arising out of or resulting from this Agreement that is not resolved through negotiation pursuant to Section 16.3, shall be settled exclusively by final and binding arbitration in accordance with the following:

(a)   except as specified below or otherwise agreed in writing, the arbitration shall be conducted in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association (such organization, the "AAA" and such rules, the "AAA Rules");

(b)   the arbitrator shall be one neutral person selected by agreement of the Parties or, failing such agreement in the thirty (30) day period after the initial list of available arbitrators has been provided to both parties by the AAA, in accordance with the AAA Rules. Unless otherwise agreed in writing by the Parties, the arbitrator shall be an experienced business attorney;

(c)   the arbitration proceedings shall take place in Newark, New Jersey;

(d)   each party to the arbitration shall bear its own legal fees, costs and expenses of the arbitration; and

(e)   judgment upon the award rendered in the arbitration may be entered in any court of competent jurisdiction.

## 17.   MISCELLANEOUS PROVISIONS.

17.1   Section headings are for convenience only and will not be construed as part of this Agreement.  This Agreement shall be construed and interpreted according to its fair meaning and without regard to any presumption or other rule requiring construction against the party drafting or causing this Agreement to be drafted.

17.2   No action arising out of this Agreement, regardless of form, may be brought by any Party more than one (1) year after the cause of action has accrued. The cause of action shall be deemed to have accrued at such time as the damaged Party becomes knowledgeable of the occurrence (s) giving rise to such action.

17.3   Neither party shall assign this Agreement, unless such assignment is to a successor, parent or subsidiary company.   The terms, conditions and obligations of this Agreement shall inure to the benefit of and be binding upon the parties hereto and the respective permitted successors and permitted assigns thereof.

17.4   Each Party shall have the right to inspect the other Party's facilities, books and records from time to time upon at least seventy-two (72) hours advanced written notice to ensure compliance with and performance of this Agreement, not to exceed two times a year.  TRIVENT shall grant MEDQUEST's representative and MEDQUEST shall grant TRIVENT's representative reasonable access, via the internet, to all financial and other information requested by MEDQUEST or

TRIVENT, whichever the case, to assist it to effectively comply with the terms of this Agreement.

17.5   This Agreement together with the Schedules hereto, which are fully incorporated herein, contains the complete and exclusive agreement between the parties relating to the subject matter herein.  This Agreement supersedes, and the terms of this Agreement govern, any prior or contemporaneous agreements, understandings, representations, communications or proposals, oral or written, between the parties relating to the subject matter of this Agreement, all of which are merged herein.  No statements in writing subsequent to the date of this Agreement purporting to modify or add to the items and conditions hereof shall be binding unless consented to in writing by duly authorized representatives of MEDQUEST and TRIVENT in a document making specific reference to this Agreement.  This Agreement may by executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.6   No waiver of any breach of any provision of this Agreement shall constitute a waiver of a prior, concurrent or subsequent breach of the same or any other provisions hereof and no waiver shall be effective unless made in writing and signed by an authorized representative. In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or illegal or unenforceable provision has never been contained herein.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

**MEDQUEST, LTD.**                              **TRIVENT SYSTEMS INCORPORATED**

By: _Elliot Stone, CEO_          By: _SENGUTTUVAN SHANMUGAM_

Its: _Elliot Stone_                    Its: _Annpuram_  PreSident

Date: _3/10/11_                         Date: _3/10/11_

**TRIVENT SYSTEMS PVT. LTD.**

By: _SENGUTTUVAN SHANMUGAM_  Director

Its: _Annpuram_

Date: _8/10/2011_

**SCHEDULE A**

## Schedule of Cost of Services/Customer Charges

Medical Record Chronologies, Timelines and Other Non-medical Opinion Services: $15 per hour cost payable to Trivent (India); $35 per hour retail price to customers (initial pricing)

Independent Contractor Opinion - Physicians: $50 per hour cost payable to Trivent (India); $75 per hour retail price to customers (initial pricing)

20% expedite fee for delivery of the foregoing services in less than one week


NOTE:  Once each year, TRIVENT may request MEDQUEST to consent to an increase in the Cost of Services based on a substantiated increase of its cost of inputs, which consent may not be unreasonably withheld.

**SCHEDULE B**

### <u>Minimum Sales Revenue</u>

-     $1,000,000 in Year 2
-     15% increase annually after Year 2

03/09/11

# Customer Contact List
## March 9, 2011

~~Bill To~~

Adelman & Adelman PA 8020 Wiles Rd

Airola law offices John Airola 2399 American River Dr Suite 2

Albert G.Stoll 55 Francisco Street Suite 403  San Francisco California 94133

Anthony Carbone, PC 601 Pavonia Avenue, 2nd Floor Jersey City, NJ 07306-2922

Arnold Lawfirm Clifford Carter 865 Howe Avenue Sacramento, CA 95825

Atkins & Associates Pamela Atkins 117 Perimieter Center West Suite W 405 Atlanta, GA 30338

Audet & Partners LLP 221 Main street Suite 1460 San Francisco, CA 94105

Billings, Morgan & Boatwright, LLC 399 Carolina Avenue,Suite 100 Orlando, Winter Park, Florida 32789

Bodoin, Agnew, Greene & Maxwell, P.C. Burnett Plaza, Suite 3450 801 Cherry Street, Unit 31 Fort Worth, TX 76

Bohn & Bohn, LLP 152 N. Third St, Suite 200 San Jose, , CA 95112

Brennan, Holden & Kavouklis, P.A 117 Avenue B SW Winter Haven, FL 33880

Burns, Cunningham & Mackey, P.C Diana Prescher P.O. Box 1583 Mobil AL 36633

Canelo Wilson Wallace & Padron 548 West 21st Street,PO boX 216, Merced 95344 California

Joseph Catania 101 E. Kennedy Blvd Suite 2400 Tampa, FL 33602

Cavanagh Law Group 161 N. Clark St, Ste. 2070 Chicago, IL 60601 312-425-1900

Champion Law LLC 3252 Rice Street St. Paul, MN  55126

Chase Kurshan Herzfeld & Rubin, LLC Peter J Kurshan 354 Eishenhower Parkway Suite - 1100 Livingston, NJ 0

Chenault Hammond, P.C. 117 Second Avenue, N.E. P.O. Box 1906 Decatur, AL 35602

Childers, Schlueter & Smith, L.L.C. Andrew Childers 1932 N. Druid Hills Road Suite 100 Atlanta, GA 30319

Cochran, Foley & Associates, P.C. 15510 Farmington Road Livonia, Michigan 48154

Cory, Watson, Crowder & DeGaris, P.C. Stephen R Hunt, Jr 2131 Mangolia Avenue, Suite 200 Birmingham, AL

DarrasLaw 3257 E. Guasti Road, Suite 300 Ontario, CA 91761

Demas & Rosenthal LLP John Demas 710 Howe Avenue Sacramento, CA 95825

Diez-Arguelles & Tejedor Carlos Diez 550 N Mills Avenue Orlando, FL 32803

5100 PGA Blvd Suite 317 Palm Beach Gardens, FL 33418

Dudley DeBosier Injury Lawyers Steve DeBosier 1075 Government Street Baton Rouge, LA 70802

FLETCHER, FARLEY, SHIPMAN & SALINAS, LLC 8750 N. Central Expressway 16th floor Dallas, Tx 75231

Frank M. Ferrell, APLC Frank M Ferrell 631 Milam, Ste. 100 Shreveport LA 71101

Frazer, Greene, Upchurch & Baker, LLC 104 St. Francis Street, Suite 800 Mobile, Alabama 36602

Frenkel & Frenkel, LLP Mark Frenkel 12700 Park Central Drive Suite 1900 Dallas, TX 75251-1508

Friedlander, Friedlander & Arcesi, PC 425 Park Avenue Waverly, NY 14892

Friedman law Offices 3800 Normal Blvd., Suite 200 P.O. Box 82009 Lincoln, NE 68501

Gallon Tackas Boissoneault & Schaffer 3516 Granite Circle Toledo, OH 43617

Galloway Jefcoat, LLP John Jefcoat 1925 Dulles Dr Lafayette, LA 70596

Glasheen, Valles & DeHoyos, L.L.P. Kristie Sauseda 1302 Texas Ave. Lubbock, , TX 79401

Goldenberg & Johnson, PLLC. 33 South Sixth St, Suite 4530, Minneapolis MN 55402

Goldsmith Clorides & Rodriguez 1400 Sylvan Avenue Englewood Cliffs, NJ 07632

HASBROOK & HASBROOK Clayton Hasbrook 2700 First National Center 120 N Robinson Avenue Oklahoma C

Hazelton lawfirm P.O. Box 1248 Bemidji, MN 56619

Heard and Smith 3737 Broadway Ste. 310 San Antonio, TX 78209

Heimerl & Lammers, LLC Benjamin  J Heimerl 901 North Third Street, Suite 110 Minneapolis, MN 55401

Heintz & Becker Steven Heintz 2424 Manatee Avenue West Suite 201 Brandenton, FL 34205

Howard L. Wexler, Esq Herzfeld & Rubin , PC 124 Broad Street New York, NY 10004

Donald M Hinkle Hinke & Foran 3500 Financial Plaza, Suite 530 Tallahassee, FL 32312

Holliday, Bomhoff, Karatinos P.L. Attorne 18920 N. Dale Marby Highway Suite 101 Lutz, FL 33548

# Customer Contact List
## March 9, 2011

Bill-to

Horowitz, Tannenbaum & Silver, P.C. Mr Tannenbaum 2001 Marcus Avenue Lake Success, NY 11042

Horwilz, Horwilz & Associates 25 E. Washington, Suite 900 Chicago, IL 60602

Houssiere, Durant & Houssiere, LLP Monica  C Vaughan 1990 Post Oak Blvd, Suite 800 Houston, TX, 77056

Hughes & Coleman Injury Lawyers 1256 Campbell Lane Suite 201 Bowling Green, KY 42104

Itlzler & Itlzler Peter E Itzler 1421 S.E , 4th Avenue, Suite A Fort lauderdale, FL 33316

1408 W Pinhook Rd S Lafayette,  LA 70503-3157 Toll Free: 877-567-4351

Jan Dils, Attorneys at Law, LC Jan Dils 1037 Market St Parkersburg, WV 26101

John Feroleto 910 Main Court Building 438 Main Street Buffalo, NY 14202

700 College Avenue, Santa Rosa CA 95404

Kampf Schiavone & Associates Attn: Mr Schiavone 715 Arrowhead Avenue Suite 104 San Bernardino, CA 9240

Katz, Step & Wright, LLC Resurgens Plaza Suite 2610 945 East Paces Ferry Rd Atlanta, GA, 30326

Keefe Disability Law 31 Janes Avenue Medfield, MA 02052

Keesal, Young & Logan 1301 Fifth Avenue Seattle, WA 98101

Kershaw, Cutter & Ratinoff LLP 401 Watt Avenue, Sacramento, CA 95864

Klein DeNatale Goldner Cooper Rosenlieb & 4550 California Ave. 2nd Floor Bakersfield, CA 93309

Kohn, Needle & Silverman 1763 Spring Field Ave Maple Wood NJ 07040

Larry Curtis, APLC Larry Curtis 300 Rue Beauregard, Bldg. "C" Lafayette, LA 70508

Law offices of David B Golomb David B Golomb New York, NY

LAW OFFICES OF DAVID L. MILLIGAN, PC David Milligan 7170 N. Financial Drive, Suite 101 Fresno, California

Law offices of Jason A Waechter Jason Waechter 19080 W Ten mile Road Southfield, MI 48075

Law Offices of Matthew W. Dietz, P.L. 2990 Southwest 35th Avenue Miami, FL 33133

Levinson Axelrod Rosemary McGeady 2 Lincoln Highway P.O Box 2905 Edison, NJ 08818

Lomurro, Davison, Eastman and Muñoz Monmouth Executive Center 100  Willowbrook Road Building #1 Freeho

Lopez McHugh LLP 100 Bayview Cir Suite 5600 Newport Beach, CA 92660

Lynch Law Firm, PC. 45 Eisenhower Drive, 3rd Floor Paramus, NJ 0765

Magnuson Lowell PS 8201 164th Avenue NE Suite 200 Redmond WA  98052

Martin Walker Reid Martin 522 S. Boradway, Suite 200 Tyler, TX 75702

Mary Alexander 44 Montgomery Street Suite 1303, San Francisco, CA 94104

McWhirter, Bellinger & Associates, P.A. 119 East Main Street Lexington SC 29072

Miller & Chevalier 655 Fifteenth Street, NW Suite 900 Washington, DC 2005-5701

Montes Herald Law Group, LLP 1121 Kinwest Parkway  Suite 100  Irving, TX 75063

Morgan & Morgan 76 South Laura Street Suite 1100 Jacksonville, FL 32202

Munley, Munley Cartwright, PC Marion Munley Forum Plaza 227 Penn Avenue Scranton, PA 18503

Nesci Keane Piekarski Keogh & Corrigan Vincent Nesci 40 Saw Mill River Rd Suite UL1 Hawthorne, NY 10532

Neuhardt Lawfirm, PC 945 Broadwater Square Billings, Montana 59102

O'Connor, Acciani & Levy, Co., LPA 2200 Kroger Building 1014 Vine Street Cincinnati, OH 45202

Payas & Payas & Payas 108 E. Robinson Street Orlando, FL 32801

Perantinides & Nolan Paul Perantinides 300 Courtyard Square 80 South Summit Street Akron, OH 44308

Podhurst Orseck, P.A. City National Bank Building 25 West Flagler Street, Suite 800 Miami, FL 33130

Ralston, Pope & Diehl, LLC 2913 SW Maupin Lane Topeka, KS 66614

Rhonda Davis & Associates, LLC 159 South Main Street Key Bank Building, Suite 1111 Akron, OH 44308

Riccolo & Semelroth Tim Semelroth 425 Second Street SE Suite 1140 Cedar Rapids, IA 52401 Cedar Rapids

Roland Brown Law offices P.O Drawer 279 Jacksonville, TX 75766

Rosner Law offices, PC 311 Landis Avenue Vineland, NJ 08360

Rothenberg & Pashaiyan 2444 Morris Avenue # 206 Union, NJ 07083

03/09/11

# Customer Contact List
## March 9, 2011

Bill To

200 East Broward Boulevard Suite 1500 Ft. Lauderdale FL 33301

Scott H. Palmer, P.C 3232 McKinney Avenue, Dallas, TX 75204mer, P.C.

Sevenish law firm 251 E. Ohio Street Suite 880 IndianaPolis, IN 46204

Shergill Lawfirm Amar Shergill 2150 River Plaza Drive, Suite 295 Sacramento, CA 95833

Daniel P. Miklos, Esq. 600 Old Country Road Garden City NY 11530

Simonson Hess & Leibowitz, P.C. 2500 Plaza 5 Harbor Side Financial Center Jersey City, NJ 07311

Sinclitico & Burns, PLC Hugh Burns 330 Golden Shore, Suite 410 Long Beach, CA 90802

Slappey & Sadd, LLC Jay Sadd 352 Sandy Springs Cir NE Atlanta, GA 30328

Sloan, Bagley, Hatcher & Perry Law Firm P. O. Drawer 2909 Longview, Texas 75606

Spangenberg, Shibley & Liber LLP 1900 E. 9th street Suite 2400 Cleveland, OH 44114

Stark & Stark P.O Box 5315 Princeton, NJ 08543

Stillman & Friedland Jay Friedland 208 23rd Avenue North Nashville, TN 37203

Sullivan Law Office 1500 Storey Ave Louisville, KY 40206

Taylor, Odachowski, Schmidt & Crossland,LLC 300 Oak Street, Suite 200 St Simons Island, GA 31522

Ted A. Greve Associates Ted A Greve 1201 North Tryon Street Charlotte, NC 28206

The Arns Law Firm 515 Folsom Street, 3rd Floor San Francisco, CA 94105

The Johnson Firm Price L Johnson 8750 N central Expressway Suite 1010 Dallas, Tx 75231

Law office of Thomas J Henry Thomas Henry 521 Starr Street Corpus Christi, TX 78401

Thomas, Means, Gillis & Seay, PC Eugene Felton 191, Peachtree St, NE, Suite 3550 Atlanta, GA 30303

Thomas, Means, Gillis & Seay P.C 3121 Zelda Court P.O Box 5058 Montgomery, AL 36103-5058

Wagner, Vaughn & Mclaughlin Alan Wagner 610 Bayshore Blvd Tampa, FL 33602

Walter Clark Legal group Attn : Chapa 4-075 El Paseo Palm Desert CA 92260

William & Morgan William Walker P. O. Box  949 135 E. Main Street Lexington, SC 29072

Yonke & Potenger, LLC 1100 Main Street, Suite 2450 Kansas City, MO 64105

# TAB B



**From:** Bob Burns <bburns@nationalrr.com>
**Sent:** Friday, August 19, 2022 12:45 PM
**To:** Elliot Stone <estone@medquestltd.com>
**Subject:** FW: Unload your medical records burden on us!

Bob Burns
Vice President of Sales
**National Record Retrieval**
101 East Carmel Drive Suite 111
Carmel, Indiana 46032

P 317-810-1702
F 877.815.2003



Connect on Linked**in**)

**From:** Trivent Legal <contactus@triventlegal.com>
**Sent:** Friday, August 19, 2022 12:24 PM
**To:** Bob Burns <bburns@nationalrr.com>
**Subject:** Unload your medical records burden on us!

Can't read or see images?  View this email in a browser

1

https://xzagb-zgpm.maillist-
mrd=1d1f9cefae6cf707&od=3z84420acc7323ff15b727a55b111509cab32e031cb5deefb32ce55fd82d06462c&linkDgs=1d1f9cefae6ec01f8
osition:absolute;left:0;text-align:left;margin-left:0;margin-top:0;width:427.5pt;height:106.9pt;z-index:251658240;visibility:visible;mso-wr
ercent:0;mso-wrap-distance-left:0;mso-wrap-distance-top:0;mso-wrap-distance-right:0;mso-wrap-distance-bottom:0;mso-position-horiz
mso-position-vertical:absolute;mso-position-vertical-relative:line;mso-width-percent:0;mso-height-percent:0;mso-width-relative:page;m
o:allowoverlap="f" o:button="t"> https://campaign-image.com/zohocampaigns/945647000008581035_2_1660680956574_logo.png" />

# Medical Records Reviews

?

15,000+ cases reviewed in the last year for 1,100+ law firms.

secure Client Portal for case management

ner support in Allentown, PA

turnaround time

ount (see Special Offer below)

verables to suit your firm's needs

ces to support every phase of a case

Ve don't use a third-party vendor.

e standard for medical records services.

Chat with us on our website!

Chat with us on our website!

# Our Expertise

**onal Injury**

MVAs
nises Liability
lip & Falls
Sex Abuse
rkers Comp

**Med Mal**

Nursing Home Abuse
Delayed Diagnosis
Birth Injuries
Surgical Errors
Treatment Errors

**Mass Torts**

3M Earplu
NEC / Baby Fo
IVC
Round U
Paraqua
CPAP

# Core Services

*e it easy for me to read and understand the medical events, treatments, physician recommendations from be*

*d Life Care Planner*

- Know what's in your client's records.

- Tell your client's story.

imize your settlements.

stify the damages.

ow the standard of care, and if it was breached.

# Pricing

*rivent Legal!  Trivent's demand letters are delivered as submittal-ready products.  They are crucial t*

*e to grow my practice."*

ed law firm

e $35/hr (except Medical Opinions - $75/hr).

free - you don't owe anything unless you approve work to begin.

ates as 'not-to-exceed' offers.  Invoices can be lower than the estimate, but never higher.

3

# *August Special Offer*

 who upload a case in August will receive up to $400 off the first case, and a
 reply to this email, and we'll get you set up.

## Give us a call!  (610) 674-6901

**Schedule a Consultation**     **Schedule a Consultation**

Have any questions?

Schedule a free consultation with our Allentown, PA tea

contactus@triventlegal.com

LinkedIn    Instagram

Our mailing address is:

1011 Brookside Rd  Ste #150  Allentown, PA  18106

Want to change how you receive these emails?

you can update your preferences or unsubscribe from this list

This email was sent by contactus@triventlegal.com to bburns@nationalrr.com
Not interested? Unsubscribe | Update profile
Trivent Legal · 1011 Brookside Rd · Allentown, PA 18106  United States

**[CAUTION]** This email originated from outside of Organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

4

# TAB C



# Medical Records Reviews

## Why Trivent Legal?

- Our Experience: 15,000+ cases reviewed in the last year for 1,100+ law firms.
- Easy-to-use and secure Client Portal for case management
- US-based customer support in Allentown, PA
- 2 week standard turnaround time
- **First-case discount** (see Special Offer below)
- Customized deliverables to suit your firm's needs
- A variety of services to support every phase of a case
- Our **employees**.  We don't use a third-party vendor.

## We set the standard for medical records services.

### Chat with us on our website!

## *Our Expertise*

| Personal Injury | Med Mal | Mass Torts / MDLs |
|---|---|---|
| | Nursing Home Abuse | 3M Earplugs |
| MVAs | Delayed Diagnosis | NEC / Baby Formula |
| Premises Liability | Birth Injuries | IVC |
| Slip & Falls | Surgical Errors | Round Up |
| Sex Abuse | Treatment Errors | Paraquat |
| Workers Comp | | CPAP |

And much more!

# *Core Services*

*The chronologies make it easy for me to read and understand the medical events, treatments, physician recommendations from beginning to end..."*
*~K.S.,  New York based Life Care Planner*

**Medical Chronology** - Know what's in your client's records.

**Narrative Summary** - Tell your client's story.

**Demand Letter** - Maximize your settlements.

**Billing Summary** - Justify the damages.

**Medical Opinion** - Know the standard of care, and if it was breached.

# *Pricing*

*"I'm a huge fan of Trivent Legal!  Trivent's demand letters are delivered as submittal-ready products.  They are crucial to our firm's workflow and have allowed me to grow my practice."*
*~T.F., Kentucky-based law firm*

- All services are $35/hr (except Medical Opinions - $75/hr).
- Estimates are free - you don't owe anything unless you approve work to begin.
- We treat estimates as 'not-to-exceed' offers.  Invoices can be lower than the estimate, but never higher.

# *August Special Offer*

New customers who upload a case in August will receive up to $400 off the first case, and a 7-day delivery.  Simply reply to this email, and we'll get you set up.

Give us a call!  (610) 674-6901

Schedule a Consultation



Have any questions?
Schedule a free consultation with
our Allentown, PA team -
contactus@triventlegal.com

 

LinkedIn          Instagram

Our mailling address is:

1011 Brookside Rd. Ste #150. Allentown, PA. 18106

Want to change how you receive these emails?

you can update your preferences or unsubscribe from this list.

This email was sent by contactus@triventlegal.com to bburns@nationalrr.com
Not interested? Unsubscribe | Update profile

Trivent Legal | 1011 Brookside Rd., Allentown, PA 18106, United States

# TAB D

*Redacted*

**From:** Joel Brodd <joel@broddlawfirm.com>
**Sent:** Tuesday, September 6, 2022 5:15 PM
**To:** Roy Dixon <royd@triventlegal.com>
**Cc:** Elliot Stone <estone@medquestltd.com>
**Subject:** RE: Our MedQuest(Record Reform) discussion
**Importance:** High

Roy,

Thank you for your email and voicemail. I was not aware that Trivent Legal was
the subcontractor for Record Reform. All of my dealings have been with Elliott
Stone and his staff at Record Reform. I have been very pleased with the work that
Record Reform has provided in the past, and I see no need to change my working
relationship with them.

You have advised that you have ended your relationship with Record Reform.
While that should not in any way affect me, the termination of your relationship
with Record Reform, has in fact had a significant affect on my practice. I have a
number of ongoing cases with Record Reform and have an immediate need to be
able to access my data and my work product so that it can be updated. I have been
advised by Record Reform that my data and my work product is now inaccessible
to me, as well as inaccessible to Record Reform, due to Trivent Legal's refusal
to release my data and my work product to the company I hired to perform the work.
I didn't hire you, I hired Record Reform. Roy, this is my data and my work
product, and my inability to access my data and my work product is causing
immediate and irreparable harm to my ability to adequately represent my clients. I
have medical chronologies and medical expense exhibits on a significant number
of cases that need to be updated, so that I can make timely settlement demands to
the liability insurance company and adequately prepare for mediation and trial.
Without having access to my own work product, which you apparently are
holding hostage, I'm not able to stay current on my client's files. Judges are not
fond of granting a continuance because some subcontractor with whom I have
never had any contractual relationship, is preventing me from obtaining my own
work product.

Your termination of your relationship with Record Reform is prohibiting me from accessing the work product that I paid Record Reform to produce, which payment in part, presumably flowed to you as the subcontractor. My previous password no longer permits me to access my cases in Record Reform, nor am I able to review any of the previous work that Record Reform was hired to perform for me. Not having access to my work product is totally unacceptable. I don't have a dog in any dispute you may have with Record Reform, but you may not hold my data and work product hostage in order to gain leverage in your ongoing dispute with Record Reform. I demand that you release all of the data and all of the work product that Brodd Law Firm, LLC has on the Record Reform portal. Either give me immediate access to my data on the Record Reform portal by giving me a new username and password, or immediately release all of my data to MedQuest so that I may access it on their portal. Either way, I need that information now. My data and my work product. I trust you can see the irreparable harm that is being caused by this delay.

I look forward to hearing from you. I have also copied Elliot Stone on this email.

Joel W. Brodd

**PLEASE NOTE MY NEW OFFICE ADDRESS:**

**Brodd Law Firm,
LLC
14679 290th Ave.
New Auburn, WI 54757-5200**

**715-861-2222
715-861-2223 (fax)**

www.broddlawfirm.com

Licensed as an attorney at law in Minnesota since 1982 and in Wisconsin since 1989.

Board Certified as a Civil Trial Law Senior Specialist by the National Board of Trial Advocacy.

Honored by Wisconsin attorneys to be among the top 5% of all Wisconsin attorneys as a Wisconsin Super Lawyer in 2006 and 2011-2022.

Rated 10 out of 10 by AVVO.

"I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution". Thomas Jefferson (1788).

2

The content of this communication, any attachments and the information contained herein is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, protected by attorney-client and/or attorney work product privilege and exempt from disclosure.  If the reader of this message is not the intended recipient, please note that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify Brodd Law Firm, LLC immediately at 715-861-2222 and return the message by email to us at joel@broddlawfirm.com.  Thank you.

**From:** Roy Dixon <royd@triventlegal.com>
**Sent:** Friday, September 2, 2022 11:40 AM
**To:** Joel Brodd <joel@broddlawfirm.com>
**Subject:** Our MedQuest(Record Reform) discussion



Hi Joel

Previously, we prepared your cases for our reseller MedQuest(Record Reform). We have ended that relationship.

Let me know if you would like to discuss how to continue using the same Trivent Medical team to do your work. The prices and procedures are basically the same.

Sincerely,

Roy Dixon, VP of Client Relations
610-674-6901 Ext. 19
Cell: 352.678.9654

1011 Brookside Rd
Allentown, PA 18106
**www.triventlegal.com**



TAB E

**Copy Center**

| | |
|---|---|
| **From:** | Elliot Stone <estone@medquestltd.com> |
| **Sent:** | Friday, September 16, 2022 3:48 PM |
| **To:** | Barry Temkin |
| **Subject:** | FW: Announcement Regarding Trivent Legal and Record Reform |

See below

**From:** Sal A. Spano <SSpano@ekjlaw.com>
**Sent:** Tuesday, September 6, 2022 6:20 PM
**To:** Elliot Stone <estone@medquestltd.com>
**Cc:** Yesenia Cruz <YCruz@ekjlaw.com>
**Subject:** FW: Announcement Regarding Trivent Legal and Record Reform

Elliot I don't understand this at all. What is going on in plain terms and what if anything do I need to do?

# EKJ Edelman, Krasin & Jaye, PLLC

SAL A. SPANO, ESQ. - PARTNER
EDELMAN, KRASIN & JAYE, PLLC.
7001 BRUSH HOLLOW RD. - SUITE 100
WESTBURY, NY 11590
PHONE: 516-742-9200
FAX: 516-742-7622
WWW.EKJLAW.COM

**From:** Roy Dixon <royd@triventlegal.com>
**Sent:** Tuesday, September 6, 2022 2:58 PM
**To:** Sal A. Spano <SSpano@ekjlaw.com>
**Subject:** Announcement Regarding Trivent Legal and Record Reform

Dear Sal,

We wish to notify you of the termination of the reseller agreement between Trivent Legal and MedQuest/Record Reform. Record Reform has contracted the services of a different medical records summary provider.

Since Trivent Legal has been the ultimate provider of Record Reform work since 2011, we wish to thank you for being a customer and assure you that we can continue to provide you with the quality product and service you have come to expect with no disruption.

Our staff in Allentown, PA is ready to assist you with customer support and special project consultation.  Our own highly qualified employees in Chennai, India are prepared to review your medical records.

Due to the timing of this change, there may be completed case files you still need to access from the original portal.  Trivent Legal can grant you access to any case files that have been prepared by Trivent's professional staff.

Please respond to this letter within the next two weeks and we will communicate with you to provide the proper access to obtain your files.

If we do not hear from you by September 30, 2022 we will assume you have no need to access any records in the custody of Trivent Legal.

Sincerely,

Roy Dixon
Vice President, Client Relations
1011 Brookside Rd
Allentown, PA 18106
610-674-6901 Ext. 19
Cell: 352.678.9654
**www.triventlegal.com**



TAB F

**Jack Barton**

| | |
|---|---|
| **From:** | Elliot Stone <estone@medquestltd.com> |
| **Sent:** | Friday, September 09, 2022 4:13 PM |
| **To:** | Barry Temkin |
| **Subject:** | FW: Trivent - Cease and Desist |

Fyi  sent earlier  to Trivent and Gadi

**From:** Elliot Stone <estone@medquestltd.com>
**Sent:** Friday, September 9, 2022 12:32 PM
**To:** zz sams (triventlegal) <sams@triventlegal.com>
**Cc:** Roy Dixon <royd@triventlegal.com>; Gadi Hill <GHill@Kleinhill.com>
**Subject:** Trivent - Cease and Desist

Sam,
Despite terminating your business relationship with Medquest, Trivent has continued to use Medquest's Record Reform service mark, logo and other identifying information owned by Medquest on the Trivent portal login and its interior pages, without Medquest's consent as required under Section 11 of the Marketing and Sales Agreement between Medquest and Trivent.  Trivent's unauthorized use has already caused confusion among Medquest customers resulting from Trivent's efforts to represent itself as a Record Reform business partner.  We hereby demand that Trivent immediately cease and desist all use of Medquest service marks. tradenames and other intellectual property ("Trademarks").   Without derogating from the generality of the foregoing demand, the purpose of this letter is to confirm that Medquest has advised you that Record Reform is a registered service mark of Medquest, which has the exclusive right to use the mark in connection with the sale and marketing of legal services.  Further, this confirms that your continued use of the Record Reform mark in connection with the marketing and sale of your company's products, including use of the mark on the company's website is in violation of Section 11 of the Marketing and Sales Agreement and must stop immediately.

Trivent is liable for any and all damages incurred by Medquest to date, or that will be incurred by Medquest in the future, due to Trivent's unauthorized use of the Trademarks.  Any further unauthorized use by Trivent will result in commencement of legal proceedings against you for general and punitive damages, and all related court costs and legal fees.

Sincerely,
Elliot

# TAB G



# TAB H

REDACTED

**From:** Bob Burns <bburns@nationalrr.com>
**Sent:** Monday, July 18, 2022 10:07 AM
**To:** Elliot Stone <estone@medquestltd.com>
**Subject:** FW: Customized Medical Chronologies & Demand Letters

Just got another one from med sum legal

Bob Burns
Vice President of Sales
**National Record Retrieval**
101 East Carmel Drive Suite 111
Carmel, Indiana 46032

P 317-810-1702
F 877.815.2003



Connect on Linked[in]

**From:** MedSum Legal LLC <medsum+recordrework.com@ccsend.com>
**Sent:** Monday, July 18, 2022 10:06 AM
**To:** Bob Burns <bburns@nationalrr.com>
**Subject:** Customized Medical Chronologies & Demand Letters

## Medical Chronologies & Demand Letters by MD's

### Our Physician Partners in India Prepare Easy to Follow Medical Chronologies & Narrative Summaries

**Our team of Over 200+ MD's reduce, organize and review charts for $25/hr, a billable expense, producing:**

- Medical Chronologies & Timelines
- Medical Narrative Summaries
- Settlement Demand Letters
- Medical Opinions for $50/hr

**Feedback From Our Client:**

*I was happy with the quick turn-around time and medical summary portion. That was a very in-depth write up for the client's treatment, so thank you for that!* - **CA based Injury Law Firm**

**Click For More Testimonials**

**Reasons to Offshore**

Just $25 per hour
1 Week Turnaround
Free Quote
Reduce Overhead
Customized Work
Free Up Staff
File Expense
Paperless
200+ MD Reviewers
Free Bookmarks
Free Hyperlinks
Free Missing Records Identify

*Upload your files!*

## Click Here To Download Our Samples

Do we expect any new case for review?

*Yes*         *No*         *May be*

2

Our Pricing          FAQ's          Upload New Case          Contact Us

**MedSum Legal LLC** | support@medsumlegal.com | 408-878-3187

MedSum Legal LLC | 548 Market St #66759, San Francisco, CA 94104-5401

Unsubscribe bburns@nationalrr.com

Update Profile | Constant Contact Data Notice

Sent by medsum@recordrework.com powered by

Try email marketing for free today!

**[CAUTION]** This email originated from outside of Organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

3

# TAB I

**MedSum Legal** LLC. Our dedicated team of experienced
medico-**legal** staffs strive to provide highly cost effectiv

### Submit Your New Case - MedSum Lega
https://medsumlegal.com/submit-your-new-case
**MedSum Legal** LLC. Our dedicated team of experienced
medico-**legal** staffs strive to provide highly cost effectiv

### MedSum Legal Private Limited – Medic
https://medsumlegalltd.com ▾
You can adjust the layers on tablet and mobile view. Sm
your full width slider on any device.

### MedSum Legal LLC | LinkedIn
https://www.linkedin.com/company/medsum-leg
**MedSum Legal** LLC **Legal** Services San Francisco, Calif
& Medical Record Review Services for USA Personal Inju

### Trivent Legal
https://medsumcrm.com/portal/auth/login.htm
Please use Google Chrome or Firefox for best compatib
**medsum@triventlegal**.com © Trivent **Legal**, all rights re

EXPLORE FURTHER

**Leave** Management | **Zoho**
People

www.zoho.com

medsumcrm.com

medsumcrm.com

**Human Resource
Management** System

www.zoho.com

Recommended to you based on what's popular · Feedback

## Related searches for medsum legal

medsum **portal**

**trivent medical**

medsum legal **llc**

# TAB J

Email: hr@medsumlegalltd.com Phone. +91-4429991636

SUBMIT YOUR NEW CASE



**MedSum Legal**

Home        Who We Are        What We Do        Careers        | Contact

# GET IN TOUCH

## OUR TEAM OF EXPERTS ARE READY TO HEAR FROM YOU



### Address

MedSum Legal
Private Limited,
No:8, Fomra City,
Nellithoppu,
Kozhumanivakkam,
Mangadu,
Chennai,



### Business Hours

24 Hours/ 7 Days



### Phone

Corporate Office:
044-29991636



### Email

hr@medsumlegalltd.com

Tamilnadu, India

– 600122

## MedSum Legal Private Limited Corporate Office Location:



**MedSum Legal Private Limited**

8, Fomra City, Nellithoppu, Srinivasa
Nagar, Kozhumanivakkam, Mangadu,
Chennai, Tamil Nadu 600122, India

**5.0**     5 reviews

Directions

View larger map

LET'S GET STARTED.

NAME                    EMAIL

SUBJECT

MESSAGE

SUBMIT MESSAGE

© Copyright 2022 | Powered by MedSum Legal Private Limited | All Rights Reserved.



TAB K

**Barry Temkin**

From:
Sent:
To:
C
S
A



E

A

3
S
N
(
y

**From:** Jennifer Hutchins <jennifer@wiltinjurylaw.com>
**Sent:** Tuesday, September 27, 2022 11:50 AM
**To:** Elliot Stone <estone@medquestltd.com>
**Subject:** Case Name: Dakota Gainey

**Jennifer Hutchins**
Office Manager | Paralegal
**WILT & ASSOCIATES, PLLC**
13113 Eastpoint Park Boulevard, Suite A, Louisville, KY 40223
Office: (502) 253-9110
Fax: (502) 253-9114
jennifer@wiltinjurylaw.com | www.wiltinjurylaw.com

Wilt & Associates, PLLC

**From:** Vikram Gautham <vikram.gautham@triventlegal.com>
**Sent:** Tuesday, September 20, 2022 10:32 AM
**To:** Jennifer Hutchins <jennifer@wiltinjurylaw.com>; Ronald Wilt <ron@wiltinjurylaw.com>
**Subject:** Case Name: Dakota Gainey

Good Morning,

Please be informed that Record Reform was a reseller for Trivent Legal for 11 years, but the contract wasn't renewed this year.  Trivent Legal has retained the previous cases that you have sent to Record Reform and can be found in the Trivent Legal portal but the case files will be there only until Nov 2022.

Please visit www.triventlegal.com to retrieve the files or to upload new cases in the future. The prices will remain the same ($35/hr) but there is no rush fee if you need it sooner than our avg TAT of 10 days. We also provide excellent Customer Service and an Account Manager will be assigned to your firm.

You can log into the Trivent Legal Client Portal using the same Record Reform portal credentials. I've attached our 'Quick Start Guide' but everything should feel very familiar as the two portals are the same.

**Currently, do you have any new cases that would need medical record review?**

Thank you,

Vikram Gautham

Trivent Legal

610-674-6901 Ext. 33

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

# *Trivent Legal – Quick Start Guide*

1. Navigate to the Trivent Legal Client Portal by visiting to our website (www.triventlegal.com) and clicking the "Client Portal" button in the top right.
2. Sign Up as a new user (even if your firm has previously done work with Trivent Legal).
3. Click on "Submit New Case" in the menu on the left side of the screen.



4. Fill in the details of the case.  Mandatory fields are marked with an asterisk.
   a. **Case Overview** is important.  Please provide a few sentences to help our team understand the context of your case.
   b. **Case Issues & Focus** tells us what information is the most valuable (e.g. medications, pre-existing conditions, etc...).
   c. **Special Instructions** is for any particular format or variation to be followed.
5. Click the "Next" button, and select the services you would like.
   a. Some selections will provide customized options (e.g. how to sort the files).
   b. PDF / Bates Referenece: Medical Chronologies tell you where to find the supporting documentation.  We provide this reference with a page number (PDF) or Bates Number.
6. Click the "Next" button.
7. Click "Add File(s)" to drag and drop your client's medical records.



8. Click the "Upload" button.
9. Click the "Next" button to complete the upload process.
10. Review your order.  You can request an estimate and tell us if there's a delivery deadline you would like us to meet at the bottom of this page.
11. Click "Submit", and we'll get to work!  If you requested an estimate, one will be emailed to you within 1-2 business days.
12. If you have any issues, give us a call – **(610) 674-6901** or email **medsum@triventlegal.com**

Rev. 3